**Deborah A. DAVIS, Plaintiff,**

v.

**CITY OF CAMDEN; R. Douglas Holmes, individually, and as Camden City Chief of Police; Sgt. Virgil Ferrari, Individually and as Camden City Chief Officer on Duty the Night in Question; Joseph D. Hart, Individually and as the Arresting Officer on the Night in Question; William Simon, Individually and as Sheriff of the County of Camden; Shirley Williams, Individually and as the Female Person who Performed Strip Search on Plaintiff; County of Camden, Defendants.**

**Civ. A. No. 85–2766.**

United States District Court, D. New Jersey.

April 6, 1987.

Jeffrey V. Puff, Woodbury, N.J., for plaintiff.

Farr, Wolf & Lyons by John A. Almeida, William G. Wright, Bellmawr, N.J., for de-

fendants Sheriff William Simon, Matron Shirley Williams and County of Camden.

City of Camden/Office of City Atty. by Patricia A. Darden, Camden, N.J., for defendants Ferrari, Hart, Holmes and City of Camden.

COHEN, Senior District Judge:

In this action under 42 U.S.C. § 1983, and under pendant New Jersey law, for damages resulting from an allegedly unconstitutional strip search, plaintiff Deborah Davis moves for summary judgment against defendant William Simon, the Sheriff of Camden County; defendant Shirley Williams, the jail matron who conducted the strip search; and defendant Camden County. For the reasons that follow, plaintiff's motion shall be granted in part and denied in part.

FACTS

On May 8, 1984, plaintiff phoned the City of Camden Police Department for assistance with a neighborhood disturbance. An officer arrived to investigate the situation. Although the facts are not totally clear, it appears from plaintiff's deposition that she accompanied the officer to the City of Camden Police Station in order to sign a complaint against her neighbors. Plaintiff's deposition at 124. For some unexplained reason, the police ran an identification check on plaintiff, determined that there were several warrants outstanding against her, and placed her under arrest. Apparently, some of these warrants, which involved motor vehicle violations, later were discovered to relate to another woman named "Debbie" Davis, but others, some involving parking tickets and another an assault and battery warrant issued in 1978,

which charged plaintiff with cutting complainant with a knife, related to plaintiff Deborah Davis.[1]

After her arrest, bail was set at $525, which plaintiff could not post. The policy of the police department was to transport arrestees who could not post bail to the Camden County Jail, to which plaintiff accordingly was taken. At that time, the Camden County Sheriff's Office maintained a blanket "policy of having an officer of the same sex strip search any person unable to post bail who was to be lodged in the Camden County Jail," regardless of the nature of the charged offense (Response of defendants Sheriff William Simon and County of Camden to Plaintiff's Request for Admissions, December 3, 1985). The County strip search policy was mandated by a New Jersey regulation. N.J.A.C. § 10A:31-3.12(2) (1979).[2] Consequently, upon her arrival at the jail, plaintiff was strip searched. She was taken to the bathroom by a female jail matron (defendant Williams), told to remove all of her clothes, and then asked to squat so that a visual inspection of her orafices could be made. The matron did not touch plaintiff.

Plaintiff remained in jail overnight. The next morning, she was taken before a judge, who set bail at seventy five dollars; presumably, bail was lowered because it became apparent that plaintiff was not the "Debbie" Davis named in the warrants involving motor vehicle violations. Plaintiff was able to post bail, and was released from the jail.

Plaintiff apparently paid the money she owed on her parking tickets in June, 1984. Plaintiff's deposition at 130. Also in June,

---

**1.** Plaintiff contends that the assault and battery warrant was "stale" and should have been dismissed several years before her arrest. Defendant City of Camden notes that the warrant was not in fact dismissed until June 20, 1984, when a municipal court judge dismissed it because the complainant failed to appear; and plaintiff's deposition appears to confirm this. Plaintiff's deposition at 11–12. For the purposes of this motion, we need not address plaintiff's contention that the warrant should have been dismissed earlier, because any potential liability would attach, not to the County, but to the City, which is not a

party to this motion. *Cf. Dufrin v. Spreen*, 712 F.2d 1084, 1087 (6th Cir.1983).

**2.** The regulation provided, in pertinent part, that in Adult County Correctional Facilities,

All newly admitted inmates shall be thoroughly searched. Each newly admitted inmate shall be strip searched for weapons and contraband. This search also shall include a check for body vermin, cuts, bruises, needle scars, and other injuries.

1984, the assault and battery charges against plaintiff were dismissed by a municipal court judge because the complainant failed to appear. Plaintiff's deposition at 11–12.

In response to a request for admissions sent by plaintiff to defendants Sheriff Simon and County of Camden, these defendants, with commendable candor, "admitted that the correctional officers employed by the Camden County Sheriff's Department and assigned to the Camden County Jail who were involved in the processing of plaintiff did not have probable cause nor reasonable suspicion to believe that the plaintiff was concealing weapons, drugs or contraband."

Plaintiff filed suit against defendants, alleging federal constitutional violations and pendent state law claims. She now moves for summary judgment against defendants Camden County Sheriff Simon, and Matron Williams.

## I. CONSTITUTIONALITY OF STRIP SEARCH

The threshold question in this § 1983 case is whether the strip search violated plaintiff's constitutional rights.[3]

In *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court, in the context of evaluating and ultimately upholding the constitutionality of a policy under which pretrial detainees were subjected to body cavity searches after each contact with outside visitors, stated:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted,

the justification for initiating it, and the place in which it is conducted.

*Id.* at 559, 99 S.Ct. at 1884. (citations omitted).

In the wake of *Wolfish*, eight of the Circuit Courts of Appeals have held that there must be a "reasonable suspicion" that an arrestee is concealing weapons or contraband in order for a strip search to be constitutionally justified. *See Weber v. Dell*, 804 F.2d 796 (2nd Cir.1986); *Jones v. Edwards*, 770 F.2d 739 (8th Cir.1985); *Stewart v. County of Lubbock*, 767 F.2d 153 (5th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1378, 89 L.Ed.2d 604 (1986); *Giles v. Ackerman*, 746 F.2d 614 (9th Cir. 1984), *cert. denied,* 471 U.S. 1053, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985); *Hill v. Bogans*, 735 F.2d 391 (10th Cir.1984); *Marybeth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir.1983); *Logan v. Shealy*, 660 F.2d 1007 (4th Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *cf. Dufrin v. Spreen*, 712 F.2d 1084 (6th Cir.1983).

Many of the cases that have addressed the constitutionality of a particular strip search have involved plaintiffs who were strip searched pursuant to a blanket strip search policy similar to the one maintained at the Camden County Jail at the time plaintiff was placed in custody. Not surprisingly, courts examining strip searches, pursuant to a blanket policy, of persons arrested for minor offenses, generally have found no reasonable suspicion to constitutionally justify the search; conversely, courts examining strip searches, again pursuant to a blanket policy, of persons arrested on serious charges or charges involving weapons or contraband, have found the searches to have been constitutionally permissible. *Compare Logan, supra; Tinetti v. Wittke*, 479 F.Supp. 486 (E.D.Wis.1979), *aff'd,* 620 F.2d 160 (7th Cir. 1980) *with Dufrin, supra; Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423 (10th Cir.

---

**3.** 42 U.S.C. § 1983 provides in relevant part: Every person who under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

1984), *vacated on other grounds,* — U.S. ——, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985). As a number of courts have noted, reasonable suspicion that a particular arrestee is concealing weapons or contraband can arise, not only from the specific circumstances relating to the arrestee or the arrest, but also from the nature of the charged offense. *See, e.g., Weber,* 804 F.2d at 800; *Dufrin,* 712 F.2d at 1089.

At least one court has taken this concept one step further, holding that in situations involving persons arrested for felonies or for misdemeanors involving weapons or contraband, "individualized suspicion" is not required; that jail administrators can employ a "blanket risk" approach and search *all* such arrestees, without having to consider whether each particular arrestee poses a security risk. *Smith v. Montgomery County,* 643 F.Supp. 435 (D.Md. 1986).[4] *See also Dufrin,* 712 F.2d at 1087. The *Smith* court reasoned that "bright lines are necessary to guide the future decisions of jail personnel, who cannot be expected to ponder the niceties of Fourth Amendment law every time they admit a potentially dangerous inmate into their facilities." *Id.* at 437.

■ In the case before us, individualized suspicion clearly was lacking; defendants candidly admit that county officers had no reasonable suspicion that plaintiff was concealing weapons or contraband. Defendants, however, urge us to adopt the "blanket risk" approach espoused in *Smith,* and to hold that the constitutionality of a strip search can be evaluated solely by reference to the nature of the charged offense. Defendant's position seems to be that if we adopt a blanket risk approach, the strip search at issue here must be held constitutionally valid, notwithstanding the absence of any actual suspicion that plaintiff was concealing a weapon, because plaintiff was arrested on a charge of assault and battery with a knife.

Defendants' argument is ingenious but ultimately flawed. First, a blanket risk approach, which permits jail administrators to infer reasonable suspicion on the basis of the charges alone, is an *application* of the reasonable suspicion standard, not a *replacement* for it. In *Smith,* a class action, defendants never conceded that they harbored no actual suspicion with respect to any of the plaintiffs; to the contrary, they persistently asserted that they had probable cause to strip search every person that had opted in to the class. 643 F.Supp. at 437. The *Smith* court refused to require jail administrators, in the first instance, to analyze whether each and every person arrested on charges involving weapons or contraband presented a security threat; it did *not,* however, hold that once a determination has been *made* that a particular arrestee does not present a danger, a search may proceed nonetheless.

Relatedly, this court believes that the blanket risk approach adopted by the *Smith* court, if it can ever exculpate a defendant who conducts a strip search notwithstanding the absence of any suspicion that the arrestee is concealing weapons or contraband, can do so only when the jail actually has adopted a policy that permits only those persons arrested on felonies or on charges involving weapons or contraband to be searched without individualized suspicion, and affirmatively requires individualized suspicion with regard to other arrestees. The Fourth Amendment requires that searches have some underlying justification, *see, e.g., Wolfish, supra.* As this court sees it, a blanket policy covering *only* persons charged with felonies or with misdemeanors involving weapons or contraband arguably is justifiable because it is based on a reasonable generalization: that persons charged with these offenses are likely to be concealing weapons or contraband. Although such a blanket policy, by its very nature, may encompass some individual arrestees with respect to whom reasonable suspicion to search will not exist, such searches will nonetheless be upheld because the *policy* is deemed to be consti-

---

**4.** The court's holding also encompassed arrestees with prior records of convictions or unresolved arrests for felony offenses or for misde-meanors involving weapons or contraband. *Smith,* 643 F.Supp. at 439.

tutionally justified. However, when an arrestee charged with a felony or a misdemeanor involving weapons or contraband is strip searched pursuant to a policy encompassing *all* arrestees, regardless of the nature of their offenses, and where it is conceded that no suspicion regarding the particular arrestee existed, the requisite justification for the search is lacking; neither the general policy nor its particular application is supportable.

■ In *Smith*, the policy at issue was a blanket policy like the one involved in this case; *all* arrestees were routinely strip searched without regard to the nature of the charged offense. To the extent that *Smith* stands for the proposition that an arrestee who is strip searched pursuant to such a policy, absent any suspicion that the particular arrestee is concealing weapons or contraband, has suffered no constitutional infringement, we do not agree.

We therefore hold that plaintiff's constitutional rights were violated when she was strip searched at the Camden County jail.

## II. PERSONAL LIABILITY OF SHERIFF SIMON AND MATRON WILLIAMS

■ Plaintiff has sued defendants Sheriff Simon and Matron Williams in both their official and their personal capacities. Official-capacity suits " 'generally represent only another way of pleading an action against an entity of which an officer is an agent,' " *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978)); accordingly, plaintiff's suit against Sheriff Simon and Matron Williams in their official capacities shall be treated as an action against Camden County, discussed *infra*. Personal-capacity suits, however, seek to impose personal liability upon a government official; damages are recoverable from the official's personal assets. *Graham*, 105 S.Ct. at 3105. In order to establish personal liability in a § 1983 action, "it is enough to show that the official, acting under color of state law, caused

the deprivation of a federal right," *id.* at 3106, and plaintiff has so shown. However, Sheriff Simon and Matron Williams are entitled to, and do, raise the defense of qualified immunity.

■ Whether an official may prevail in a qualified immunity defense depends upon the "objective reasonableness of [his] conduct as measured by reference to clearly established law." *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). There is no general consensus on when the unconstitutionality of blanket strip search policies became "clearly established." *Compare Weber v. Dell*, 804 F.2d 796, 803 (2nd Cir.1986) (clearly established in 1983); *Ward v. County of San Diego*, 791 F.2d 1329, 1333 (9th Cir.1986) (clearly established in 1981) *with Fann v. City of Cleveland*, 616 F.Supp. 305, 314 (N.D.Ohio 1985) (not clearly established in 1983); *John Does 1–100 v. Ninneman*, 612 F.Supp. 1069, 1072 (D.Minn.1985) (not clearly established in 1984).

Standing alone, this conflicting authority, the relatively recent vintage of most strip search cases, and the fact that the United States Court of Appeals for the Third Circuit has yet to rule on the constitutionality of blanket strip search policies, would incline us to hold that Sheriff Simon and Matron Williams are not liable for damages in their personal capacities. This inclination is bolstered by the fact that at the time of plaintiff's strip search, the County's strip search policy was mandated by a state regulation. *See* N.J.A.C. § 10A:31–3.12(2) (1979), *supra* note 2. State laws are presumptively valid; and while adherence to an unconstitutional state law mandate will not absolutely immunize a local government official, he will be excused from § 1983 liability "for acting under a statute that he reasonably believed to be valid but that was later held unconstitutional, on its face or as applied." *Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). In this court's view, the New Jersey regulation at issue here was not, in May, 1984, so clearly unconstitutional that the defendants reasonably should have known that they were obligat-

ed not to implement it, and they are entitled to a defense of good faith.

For the foregoing reasons, plaintiff's summary judgment motion shall be denied with respect to the liability of Sheriff Simon and Matron Williams in their personal capacities.

## III. LIABILITY OF CAMDEN COUNTY

■ A municipality cannot be held liable under 42 U.S.C. § 1983 for constitutional deprivations unless the unconstitutional conduct occurred as a result of the implementation or execution of a municipal policy or custom. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The County of Camden has admitted that "the Camden County Sheriff's Office maintained a policy of having an officer of the same sex strip search any person unable to post bail who was to be lodged in the Camden County Jail in May, 1984." However, it argues that because this policy was mandated by a state regulation, *see supra,* the policy was not a "county policy" as contemplated by *Monell* and its progeny, but a *state* policy that county officials merely enforced; and that accordingly, the County cannot be held liable under § 1983 for plaintiff's damages.

Before we address the County's argument, we note that both the New Jersey regulation and the policy of the Camden County Sheriff's Office have been changed since plaintiff's strip search. The policy of the Sheriff's Office, which was amended to require probable cause to strip search persons detained for various minor offenses, was changed more than a year *before* the similar amendment of the New Jersey regulation.[5]

■ Although, somewhat suprisingly, there is little authority on the issue before us, we believe that a municipality should be held liable under § 1983 when it officially adopts a policy that subsequently is declared unconstitutional, notwithstanding the fact that the policy was mandated by state law, and we so hold. As we see it, the County's argument that the municipal policy requirement of *Monell* has not been satisfied in this case misconstrues the meaning of that requirement. As the Supreme Court recently stated, the official policy requirement was imposed in light of the legislative history of § 1983, which revealed that Congress doubted its constitutional power to impose vicarious liability on municipalities. *Pembaur v. City of Cincinnati,* —— U.S. ——, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). Accordingly,

the "official policy" requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. *Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts "of the municipality"—that is, acts which the municipality has officially sanctioned or ordered.

*Id.* (emphasis in original). In the instant case, there is no attempt to impose liability on the County on a respondeat superior basis; the Camden County Sheriff's Office has acknowledged that it officially sanctioned the strip search policy at issue. Although we are not unsympathetic to the County's dilemma, it simply is not "the problem to which *Monell's* requirement of an 'official policy' was addressed." Schnapper, *Civil Rights Litigation After Monell,* 79 Colum.L.Rev. 213, 225 (1979). *See also id.* at 226 ("if the Forty-second Congress had thought it inappropriate that cities be held liable for carrying out state mandated policies, it would not have permitted suits against cities at all, for that Congress regarded everything a city did as merely implementing such policies.")

---

5. Effective December 5, 1985, the New Jersey regulation requires probable cause to believe that an inmate is concealing weapons or contraband in order to conduct a body cavity search. N.J.A.C. § 10A:31–3.12(b)(2)(ix). The regulation also requires that the reason for each strip or body cavity search must be reported before the search is conducted. N.J.A.C. § 10A:31–3.-12(b)(2)(vii). Since November 27, 1984, the Camden County Sheriff's Office has maintained the policy described above. Affidavit of Frank H. Senatore, Camden County Undersheriff.

Furthermore, a holding contrary to the one we reach would be palpably inconsistent with the underlying purpose of § 1983, a statute designed to insure that victims of unconstitutional state action are compensated for the violation of their rights, and one that, as such, must be liberally construed. In light of these factors, the Supreme Court held in *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), that municipalities are not entitled to qualified immunity based on the good faith of their officials, reasoning that "even where some constitutional development could not have been foreseen by municipal officials, it is fairer to allocate any resulting financial loss to the inevitable costs of government borne by all the taxpayers, than to allow its impact to be felt solely by those whose rights, albeit newly recognized, have been violated." *Id.* at 655, 100 S.Ct. at 1417. Faced with a choice between depriving victims of constitutional violations of recovery and imposing liability without any real fault on local governments, the *Owen* court, in view of the remedial purpose of § 1983, chose the latter course. Our holding today is motivated by similar policy considerations.[6]

A number of courts have imposed liability on local government bodies for unconstitutional policies that are authorized, but not mandated, by state law. *See, e.g., Evers v. County of Custer,* 745 F.2d 1196, 1203–04 (9th Cir.1984) (county); *Familias Unidas v. Briscoe,* 619 F.2d 391, 403–04 (5th Cir.1980) (school district).[7] We recognize that there is a distinction between the situation in which state law authorizes un-

constitutional conduct, and the situation in which state law requires an unconstitutional procedure to be implemented; in the former, municipal officials can decline to follow the law without actually violating it, while in the latter they cannot. Yet the concern that an official will be forced to "choose between being charged with dereliction of duty if he does not [enforce state law], and being mulcted in damages if he does," *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967), is precisely that which the qualified immunity defense is designed to alleviate; the official is immunized from personal liability if he reasonably relies on a state law that subsequently is declared unconstitutional. And while we are not insensible either to the predicament of the municipality itself in such circumstances, or the concern that "society would be ill-served if [local officials] took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement," *Michigan v. DeFillippo,* 443 U.S. 31, 38, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979), it is noteworthy that such considerations have not prevented the courts from imposing liability on municipalities for implementing unlawful, yet state mandated, policies in other contexts. *See, e.g., EEOC v. County of Allegheny,* 705 F.2d 679 (3d Cir.1983) (county's avowed policy of refusing to consider applicants over the age of 35 for positions as police officers violates the Age Discrimination in Employment Act of 1967; county therefore is liable for any damages that plaintiffs could establish notwithstanding the fact that county policy was mandat-

---

6. The *Owen* court also stressed that "a damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees," 445 U.S. at 651, 100 S.Ct. at 1415. Were we to immunize municipalities in the circumstances presented in this case, plaintiffs whose constitutional rights are violated through the execution of state mandated municipal policies frequently would be unable to recover damages; municipal officials often may be shielded from liability in their personal capacities under the qualified immunity defense, and the Eleventh Amendment prohibits private actions for damages against the state in federal court, *e.g. Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

7. However, the propriety of imposing liability in these circumstances is not universally accepted. *See Crane v. State of Texas,* 759 F.2d 412, 413 n. 19 (5th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 570, 88 L.Ed.2d 555 (1985) (it is an "unexceptionable proposition that local governments and their officials who act in conformance with a state statutory scheme will not be held liable for § 1983 damages if the scheme is later held unconstitutional.") *But see Rhode v. Denson,* 776 F.2d 107, 110 (5th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986) (acknowledging *Crane* but declining to address "whether or not a county official discharging a duty imposed by state law can ever be considered a 'county policymaker.'")

ed by state law). *And cf. Anela v. City of Wildwood*, 790 F.2d 1063 (3d Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986) (city is liable under § 1983 when it implements unconstitutional bail schedule established by state court judge, in contravention of state supreme court rule).

■ Finally, the argument that municipal liability should not attach when municipal officials effectuate a state mandated policy because the officials had no choice but to implement the policy[8] can be met with the observation that not only do these officials have such a choice, but they may be obliged not to implement the state law if they wish to avoid personal liability under § 1983. Municipal officials cannot blindly implement state laws; they are required to independently assess the constitutionality of the laws and, although they will be protected if their assessment, albeit incorrect, was objectively reasonable, they will be held personally liable if they should have known that the law was unconstitutional, *see Harlow*, discussed *supra*. Indeed, in this very case, Camden County officials ultimately *did* change the County's strip search policy notwithstanding the New Jersey regulation. Both in initially following, and in subsequently declining to follow, the dictates of the New Jersey regulation, these officials established final county policy with respect to the subject matter in question.

■ In short, the fact that state law mandates that a municipality implement a particular policy does not render the municipality's affirmative adoption of that policy any less of a municipal policy than when state law merely authorizes the municipality's action, or when state law is silent. This is not a case in which the actions of county officials cannot be attributed to the county itself; Camden County has acknowledged that it officially sanctioned the strip search policy. *Compare Familias Unidas*

*v. Briscoe*, 619 F.2d 391, 404 (5th Cir.1980) (county not liable under § 1983 when county judge implements unconstitutional state statute). Camden County therefore is liable to plaintiff for the damages she sustained as a result of the unconstitutional strip search, and plaintiff's summary judgment motion against Camden County with respect to her federal constitutional claim shall be granted.

## IV. STATE LAW CLAIM

■ Plaintiff has appended a state law cause of action for the tort of outrage—which, in essence, is a claim for intentional infliction of emotional distress, *see Hume v. Bayer*, 178 N.J. Super. 310, 312, 428 A.2d 966, 967 (Law Div.1981)—to her federal constitutional claim. The County of Camden, Sheriff Simon and Matron Williams assert that various provisions of the New Jersey Tort Claims Act, N.J.S.A. § 59:1–1 *et seq.*, immunize them from liability. We agree.

N.J.S.A. § 59:3–4 provides that "if a public employee acts under the apparent authority of a law that is unconstitutional, invalid, or inapplicable, he is not liable for an injury caused thereby except to the extent that he would have been liable had the law been constitutional, valid, and applicable." Sheriff Simon and Matron Williams therefore are immune from liability to plaintiff; they acted under the apparent authority of an unconstitutional state regulation.

Because the individual defendants are not liable, the county defendant cannot be held liable. See N.J.S.A. § 59:2–2(b) ("A public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable.") *See also Marley v. Borough of Palmyra*, 193 N.J.Super. 271, 283, 473 A.2d 554, 560 (Law Div.1983) ("the availability of public employee immunity may determine the liability of the munici-

---

**8.** *See Pembaur*, 106 S.Ct. at 1300 ("municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for estab-

lishing final policy with respect to the subject matter in question") (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985)).

pality itself.")[9] Thus, plaintiff's motion for summary judgment shall be denied with respect to her state law claim against the county defendants.

---

**9.** Plaintiff also failed to file the requisite notice of claim with the County pursuant to N.J.S.A. § 59:8–8 and § 59:8–9, which establishes an alternate ground for barring her from bringing her state law claim against the County.