**William ERNST and Lynette Ernst, Plaintiffs,**

v.

**BOROUGH OF FORT LEE, Police Officer Wayne Monico, Police Officer William Cullen, Police Officer Gary Moleta, Defendants.**

Civ. A. No. 88–3474 (MTB).

United States District Court,
D. New Jersey.

June 5, 1990.

John L. Weichsel, Hackensack, N.J., for plaintiffs.

Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski by Jeffrey M. Kadish, Livingston, N.J., for defendants.

## OPINION

BARRY, District Judge.

### I. INTRODUCTION

This lawsuit had its genesis in the arrest of plaintiff William Ernst ("Ernst") by officers of the Borough of Fort Lee on the evening of July 10, 1987. That evening, Ernst was driving with his wife, Lynette, also a plaintiff, when two police officers noted "suspicious materials" in Ernsts' vehicle and radioed into headquarters for a license plate check. When they were advised that the registration of the vehicle had been suspended, Ernst was pulled over and subsequently arrested.[1] A search of the interior of the car disclosed nothing but old clothing and empty food bags.

Ernst was taken to the Borough's station house, where he was given an opportunity to make several phone calls in an attempt to post the $525.00 which had been established as bail. When he was unable to post bail, he was subjected to a strip search before being placed in a holding cell. The search was undertaken pursuant to the guidelines set forth in the Fort Lee Police Department Operations Manual, and in accordance with the terms of N.J.S.A. 2A:161A–1, *et seq.*, which provide that all detainees are to be strip-searched prior to being placed in a holding cell, provided that the detainee has been given a reasonable opportunity to post bail.[2]

After a brief period of time in the holding cell, Ernst was transported to the Bergen County Jail, where he remained for the rest of the night. He was released the following day, after his father posted bail. The charge against him was subsequently dismissed.

Plaintiffs instituted this lawsuit, pursuant to 42 U.S.C. § 1983, alleging that the Borough of Fort Lee and its officers acted under color of state law to deprive them of

---

1. Ernst was placed under arrest pursuant to the terms of N.J.S.A. 39:3–40 and N.J.S.A. 39:5–25. N.J.S.A. 39:3–40 makes it unlawful to operate a motor vehicle during any period when the vehicle's registration has been revoked. N.J.S.A. 39:5–25 allows any police officer to effectuate a warrantless arrest of any person who violates the provisions of Chapter 3 of Title 39, when the violation occurs in the presence of the officer.

2. The provisions of the Fort Lee Police Department Operations Manual and the terms of N.J. S.A. 2A:161A–1 *et seq.* are set forth in greater detail within.

their rights secured under the Constitution of the United States.[3] They primarily challenge the strip search conducted on William Ernst, asserting that this search served no legitimate purpose except to "embarrass and demean" him. *See* First Amended Complaint at ¶ 16. More specifically, plaintiffs assert that this search was conducted in violation of the Fourth Amendment's prohibition against unreasonable searches, inasmuch as it was conducted without any reasonable suspicion to believe that Ernst was concealing a weapon or harboring contraband.

Plaintiffs claim, as well, that the stop and search of their vehicle was motivated by racial bias; that the bail established for Ernst was excessive and unreasonable; and that emotional distress was intentionally inflicted on Ernst when he was strip searched at the station house.

Present before the Court is the motion of defendants for summary judgment dismissing plaintiffs' complaint in its entirety. For the reasons set forth below, defendants' motion will be granted in part and denied in part.[4]

## II. DISCUSSION

### IIa. *Strip Search*

■ Prior to being placed in the cell block at the Fort Lee station house, Ernst was subjected to a strip search. As indicated, this search was undertaken pursuant to the guidelines set forth in the Fort Lee Police Department Operations Manual, which specifically provides that all prisoners who are to be detained at the station house or transported to the Bergen County Jail are to be searched, provided that the arrestee has had a reasonable opportunity to post bail. Ernst challenges this procedure as being violative of his Fourth Amendment right to be free from unreasonable searches, and maintains that the police may not undertake a strip search without first harboring a reasonable suspicion that the person to be searched is in possession of a dangerous weapon, a controlled substance, or evidence of a crime. For the reasons set forth below, I agree.

While the Fort Lee manual specifically advises that a strip search should not be "routinely" undertaken of those who have been arrested for traffic violations, the manual nevertheless directs that all those placed in detention—regardless of the nature of the offenses with which they are charged—are to be subjected to such a search. The manual specifically provides:

When processing prisoners at headquarters, a strip search is to be undertaken of any person charged with a crime, by a person of the same sex.

A strip search should not be routinely undertaken of a person charged with a motor vehicle violation, disorderly persons offense, or petty disorderly persons offense, unless:

1. there is probable cause to believe that the prisoner is concealing a weap-

---

**3.** Title 42, Section 1983 of the United States Code, which is derived from the Civil Rights Act of 1871, provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

**4.** Prior to delving into the merits—and lack thereof—of defendants' motion, I note the weakness of Lynette Ernst's claims. Although it is somewhat difficult to ascertain from the poorly worded complaint the exact nature of her allegations, it appears that the primary purported justification for her presence in this lawsuit is the assertion that the "acts and omissions of the defendants ... [as to William Ernst] ... [caused] Lynette Ernst as his wife thereby [to suffer] derivative damages and loss of liberty as she was obliged to stay with relatives in New Jersey until she could arrange bail for her husband". *See* First Amended Complaint at ¶ 21. The absurdity of this claim barely warrants a response, except to note that the claim will be dismissed out of hand. One does not suffer a deprivation of liberty at the hands of the state by choosing to remain in the area where another has been incarcerated. It is clear that the real party in interest herein is William Ernst. Accordingly, this opinion will focus on his claims as though he were the sole plaintiff.

on, controlled dangerous substance, or evidence of a crime, or

2. the prisoner will be placed in the cell block, or transported to the Bergen County jail or other detention facility, pursuant to an arrest authorized by law, after a reasonable opportunity to post bail has been given.

*See* Defendants' Movant Brief at Exh. D. This policy is largely consistent with the terms of N.J.S.A. 2A:161A–1 and N.J.S.A. 2A:161A–8 which, while generally forbidding a strip search of any person who is not charged with a serious crime, nevertheless provide that an arrestee may be strip searched prior to being placed in a detention facility, regardless of the nature of the offense with which the arrestee is charged. The statute, known as the New Jersey Strip Search Act, specifically provides:

2A:161A–1. Strip search; prohibition; exceptions.

No strip search may be conducted upon a person who has been detained or arrested for the commission of an offense other than a crime, without a warrant or the consent of the person to be searched unless there is probable cause to believe that a weapon, controlled dangerous substance, as defined by the "New Jersey Controlled Dangerous Substances Act," P.L.1970, c. 226 (C. 24:21–1 et seq.), or evidence of a crime will be found.

2A:161A–8. Search of person unable to post bail; bail schedule for offenses other than crimes

Nothing in this act shall prohibit a strip search or body cavity search of a person unable to post bail after a reasonable opportunity to do so, who is lodged by court order or pursuant to an arrest authorized by law, in a lockup, detention facility, prison, jail or penal institution. The Administrative Office of the Courts shall promulgate a bail schedule for all offenses, other than crimes, and bail may be fixed and accepted by the law enforcement officer in charge of the station house.

*See* N.J.S.A. 2A:161A–1; N.J.S.A. 2A:161A–8.

Challenge to the constitutionality of a strip search as applied to one arrested for a traffic or other minor infraction is not new to this Court, which has on two prior occasions invalidated such searches where the police lacked a reasonable suspicion to believe that the suspect was concealing a dangerous weapon or harboring contraband. *See O'Brien v. Borough of Woodbury Heights,* 679 F.Supp. 429 (D.N.J. 1988); *Davis v. City of Camden,* 657 F.Supp. 396 (D.N.J.1987).[5] In *Davis,* the Hon. Mitchell H. Cohen invalidated a mandatory search policy in effect at the Camden County jail which required that all arrestees who could not post bail be strip searched before being placed in detention. *See Davis,* 657 F.Supp. at 398. In *O'Brien,* the Hon. Stanley S. Brotman invalidated a similar blanket strip search policy which was applied to arrestees who had been detained on petty disorderly persons offenses where the officers involved possessed no reasonable suspicion that any of the arrestees was concealing a weapon or harboring contraband at the time of the search. *See O'Brien,* 679 F.Supp. at 434.

In the course of invalidating the strip search policies, both *Davis* and *O'Brien* relied upon the reasoning set forth in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In *Bell,* the Supreme Court reviewed a policy which subjected pretrial detainees to body cavity searches after each contact visit with someone from outside the holding facility. The Court stated:

The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Counts must consider the scope of the particular intrusion, the manner in which it is conducted,

---

5. I am unaware of any decision of the Court of Appeals for the Third Circuit which has specifically addressed the issues presented here. I am similarly unaware of any court—state or federal—which has interpreted the newly enacted Strip Search Act.

the justification for initiating it, and the place in which it is conducted.

*See Bell*, 441 U.S. at 559, 99 S.Ct. at 1884.

While the Court in *Bell* ultimately upheld the propriety of the search policy, it did so on facts which are clearly distinguishable from those presented here. In *Bell*, most of the pretrial detainees were arrested on serious felony charges and, in fact, many of the detainees had previously been convicted of serious crimes. *Bell*, 441 U.S. at 524, 99 S.Ct. at 1866. Here, Ernst was arrested for what is admittedly one of most petty traffic violations extant within the State of New Jersey—driving with a suspended registration. The arresting officers have at no time indicated that they suspected that Ernst was armed or dangerous, nor have they indicated that they believed Ernst was concealing drugs or contraband. In short, as in *Davis* and *O'Brien*, there is simply nothing in the record to indicate that there was any reason at all—other than the wholly inadequate reason that he could not post bail—to subject Ernst to the "humiliation and degradation" of a strip search. *See O'Brien*, 679 F.Supp. at 434.

The courts of this district have not stood alone in invalidating strip searches which are undertaken without reasonable suspicion to believe that an arrestee is concealing a weapon or drugs or harboring contraband. Indeed, as both Judges Cohen and Brotman noted in their consideration of this issue, no less than seven United States Courts of Appeals have invalidated such searches under similar circumstances. *See Weber v. Dell*, 804 F.2d 796 (2nd Cir.1986), *cert. denied sub nom. County of Monroe v. Weber*, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987); *Jones v. Edwards*, 770 F.2d 739 (8th Cir.1985); *Stewart v. County of Lubbock*, 767 F.2d 153 (5th Cir.1985), *cert. denied*, 475 U.S. 1066, 106 S.Ct. 1378, 89 L.Ed.2d 604 (1986); *Giles v. Ackerman*, 746 F.2d 614 (9th Cir.1984), *cert. denied*, 471 U.S. 1053, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985); *Hill v. Bogans*, 735 F.2d 391 (10th Cir.1984); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir.1983); *Logan v. Shealy*, 660 F.2d 1007 (4th Cir.1981), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982).[6]

■ In each of these cases, the task was, as it had to be, to balance the governmental interest in maintaining safe detention facilities against the rights of the arrestee to be free from what is, by all accounts, a degrading and unpleasant experience. The "reasonable suspicion" test—under which an arrestee may not be strip searched absent a reasonable suspicion that he or she is carrying a weapon or drugs or harboring contraband—fulfills this goal by properly balancing the arrestee's right to be free from unreasonable intrusion against the legitimate interest of the police in maintaining a secure jail facility, an interest which is simply not compromised by the mere inability to post bail. What constitutes a "reasonable suspicion" must, of necessity, depend upon the individual circumstances of each case, and will obviously include an analysis of such factors as the nature of the offense which prompted the arrest, as well as the arrestee's appearance and his or her prior criminal record. *See, e.g., Giles*, 746 F.2d at 617 (summarizing factors). Absent a reasonable suspicion to believe that the safety of a detention facility could be compromised, however, there is simply no need for conducting a strip search and, thus, utterly no justification for having done so here.

Although defendants have generally ignored the large body of case law extant on this topic, they have attempted to distinguish the holding in *Davis* by noting that the precise regulation which was before Judge Cohen, N.J.A.C. § 10A:31–3.12(b)(2), has since been modified to eliminate the blanket policy of strip searching all arrestees. Defendants are, indeed, correct in noting that the law of New Jersey has been revised by virtue of the adoption of the Strip Search Act which ensures a modicum of due process prior to subjecting an arres-

---

**6.** The facts of many of these opinions bear a striking similarity to the facts of the present case. *See especially, Giles*, 746 F.2d at 615 (strip search unconstitutional on traffic offender who is unable to post bail). *See also Hill*, 735 F.2d at 392–394 (strip search unconstitutional after arrest for driving with restriction on license).

tee to such a search. Defendants are also correct in their assertion that the provisions of the Fort Lee manual largely track the provisions of the Strip Search Act. In and of themselves, however, these assertions do nothing to answer the question presented here which is not whether the provisions of the Fort Lee police manual conform to the standards established under state law, but whether the provisions of the Fort Lee manual and the Strip Search Act conform to the provisions of federal law.[7]

■ It is crystal clear that the provisions of the Fort Lee operations manual, and those sections of the Strip Search Act upon which it is based, do not pass muster under the Constitution to the extent that they permit the indiscriminate strip search of an arrestee on a minor offense without requiring a reasonable suspicion that the arrestee is concealing a weapon or harboring contraband or drugs. Moreover, the Fort Lee manual and the Strip Search Act either suggest or require that a strip search be undertaken of all arrestees who will be placed in a holding cell merely as a result of the arrestee's inability to post bail. *See* N.J.S.A. 2A:161A–8.

Defendants, while acknowledging that the law as currently written permits such searches, have stressed that a strip search can only take place after an arrestee has been given a reasonable chance to post bail and is unable to do so. But the inability to post bail simply confirms the obvious, that is, that the arrestee will in fact be incarcerated for some period of time until a probable cause determination can be made by a neutral and detached magistrate in conformity with the requirements of *Gerstein v. Pugh.*[8] The mere fact that an arrestee will be incarcerated, however, does not render a strip search reasonable. Stated somewhat differently, arrest itself, standing alone, is simply not enough.

This case has been pending almost two years and the officers in question have at no time even suggested that they suspected that Ernst was harboring a weapon or concealing contraband or drugs at the time he was subjected to the strip search. Thus, summary judgment will be denied on this aspect of the complaint.[9]

---

**7.** I note in passing that counsel for defendants has, throughout his brief, repeatedly asserted that because the conduct of the defendants is deemed permissible under state law, it is somehow automatically permissible under federal law. For example, in addressing the subject of immunity for the individual officers (a subject to which I shall shortly turn my attention) counsel asserts that because the state has enacted a statute granting immunity to its public officials who are charged with the discretionary execution of the law, *see* N.J.S.A. 59:3–3, the state has therefore insulated these officials from a suit based upon the deprivation of rights secured by the Constitution of the United States. *See* Defendants' Movant Brief at 20–21. It is fundamental to our federal system, however, that a state cannot pass legislation which would exempt its officers from the strictures of the federal Constitution. To hold otherwise would render meaningless the guarantees of individual liberty which have been expressly made applicable to the states through the Fourteenth Amendment. *See Mancini v. Lester,* 630 F.2d 990, 994–995 (3rd Cir.1980).

**8.** *See Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975).

**9.** It is clear that the Borough of Fort Lee would be subject to liability under Section 1983 for promulgating and implementing the strip search policy. As the Supreme Court stated in *Monell*

*v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), "Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers". *Monell,* 436 U.S. at 690, 98 S.Ct. at 2035. Even were I to conclude that the officers in question enjoyed qualified immunity (a proposition which appears doubtful—see below), the municipality would not be exempt on this ground. Under the express terms of *Owen v. City of Independence,* 445 U.S. 622, 655, 100 S.Ct. 1398, 1417, 63 L.Ed.2d 673 (1980), municipalities are not entitled to qualified immunity based upon the good faith actions of their officers.

As to the officers in question, it is unclear whether plaintiffs are suing the officers in their "official" or "individual" capacities. To the extent that this is an official capacity suit, it is treated no differently than a direct cause of action against the municipality. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity". *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (*noting Brandon v. Holt,* 469

## IIb. *Remaining Claims*

As noted earlier, plaintiffs raise a host of complaints commencing with and emanating from the initial stop of the vehicle. These complaints will be disposed of summarily.

First, plaintiffs allege that the stop of the vehicle and the events which followed that stop were motivated by racial bias, an allegation predicated on nothing more than the fact that William Ernst is white and Lynette Ernst is black. Not only is the record devoid of any evidence which supports plaintiffs' speculation, but the affidavits of the officers involved are crystal clear that plaintiffs were stopped and William Ernst arrested for a permissible reason. Indeed, the Final Pretrial Order entered in this matter contains, at paragraph six, a stipulation that Ernst was "validly arrested". Summary judgment will be granted on this claim.

■ Second, plaintiffs complain of the $525.00 bail William Ernst was required to post, bail set pursuant to the Bail Schedule established by the Borough of Fort Lee Municipal Court, which specifically provides that $525.00 be posted where there has been an arrest for a violation of N.J.S.A. 39:3–40 (suspended registration). Plaintiffs assert that this bail was "excessive and unreasonable", presumably invoking *sub silentio* the excessive bail provision of the Eighth Amendment.[10] *See* U.S. Const.Amend. 8.

Plaintiffs have not argued the merits of the excessive bail claim in response to the motion for summary judgment, and there is little indeed that they could say. The Eighth Amendment, of course, does not prohibit bail; the Eighth Amendment pro-

hibits *excessive* bail. There is simply nothing in this record to indicate that the bail imposed on Ernst was excessive or unreasonable, and summary judgment is appropriate on this claim as well.

■ The remaining allegations in plaintiffs' complaint set forth various causes of action under state law. While I note with some dismay the lack of specificity in these allegations, it is clear that even were these claims more specifically articulated and construed in as broad a fashion as possible, defendants would be shielded from liability under the provisions of the New Jersey Tort Claims Act, N.J.S.A. 59:1–1 *et seq.*

With specific reference to Ernst's claim that the individual officers are liable for the intentional infliction of emotional distress, it is clear that the provisions of N.J.S.A. 59:3–4 would afford them immunity. N.J.S.A. 59:3–4 provides that a public employee shall not be liable in tort when the employee has acted pursuant to a law which is later held to be unconstitutional:

> If a public employee acts under the apparent authority of a law that is unconstitutional, invalid or inapplicable, he is not liable for an injury caused thereby except to the extent that he would have been liable had the law been constitutional, valid and applicable.

*See* N.J.S.A. 59:3–4. When the officers subjected Ernst to a strip search, it is clear they were acting consistent with the law of this state as forth in the Strip Search Act, N.J.S.A. 2A:161A–1 *et seq.* While I need not now decide whether these officers will be able to avail themselves of immunity as to Ernst's claims arising under the federal Constitution, *see* note 9, *supra*, it is clear

U.S. 464, 471–472, 105 S.Ct. 873, 877–878, 83 L.Ed.2d 878 (1985)). To the extent that plaintiffs are suing the officers in their individual capacities, the officers may be held liable only to the extent that their conduct violated clearly established constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818–819, 102 S.Ct. 2727, 2738–2739, 73 L.Ed.2d 396 (1982). In the wake of two decisions on point within this district as well as the decisions of seven United States Courts of Appeal, the officers may well have difficulty establishing the requisite good faith belief that their actions were reasonable

under the circumstances. This is, however, an issue I need not reach at this time.

**10.** The Supreme Court has assumed without deciding that the Eighth Amendment's prohibition against excessive bail is applicable to the states through the Fourteenth Amendment. *See Schilb v. Kuebel,* 404 U.S. 357, 365, 92 S.Ct. 479, 484, 30 L.Ed.2d 502 (1971). The United States Court of Appeals for the Third Circuit has expressly so held. *See Sistrunk v. Lyons,* 646 F.2d 64 (3rd Cir.1981).

that the state has immunized them for their actions to the extent that they acted within the parameters of state law, which they did.[11]

Having found that the officers would be immune *vis-a-vis* Ernst's emotional distress claim, it is clear as well that the Borough of Fort Lee would also be immune. N.J.S.A. 59:2-2(b) specifically provides that a public entity is not liable for an act or omission of a public employee where the public employee is not liable. *Id.; See also Davis,* 657 F.Supp. at 404 (accord).

## III. CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment will be granted except insofar as the complaint alleges a violation of William Ernst's Fourth Amendment rights regarding the strip search conducted on his person.

An appropriate order shall issue.

---

11. I note that the result reached here is similar to that reached in *Davis, supra,* in which plaintiff's claim for emotional distress resulting from the strip search was denied by virtue of N.J.S.A. 59:3-4. *See Davis,* 657 F.Supp. at 404. Curiously, *O'Brien* permitted a similar claim to proceed to the jury, the applicability of N.J.S.A. 59:3-4 apparently not having been considered. *See O'Brien,* 679 F.Supp. at 440. To the extent that *Davis* differs from *O'Brien* in this regard, I am in agreement with *Davis.*